UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Criminal Action No. 5: 19-050-DCR |
| ) | |
| V. ) | |
| ) | |
| LAWRENCE WESTBROOK, III, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Following indictment, Defendant Lawrence Westbrook filed a motion to suppress evidence discovered after a traffic stop on June 23, 2018, and to suppress all statements made to law enforcement and evidence found on his vehicle following his arrest on August 31, 2018. [Record No. 35] The motion was referred to United States Magistrate Judge Matthew Stinnett for issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Stinnett conducted an evidentiary hearing and issued an opinion, recommending that the motion to suppress be denied. [Record No. 47]

A superseding indictment was returned before the initial Report and Recommendation was ripe for review. As a result, Westbrook's motion to suppress was denied as moot. [Record No. 54] Westbrook then renewed his motion. [Record No. 65] Magistrate Judge Stinnett filed a second Report and Recommendation on July 2, 2019, again recommending that Westbrook's motion to suppress be denied. [Record No. 66]

On July 16, 2019, Westbrook filed two objections to the magistrate judge's Report and Recommendation. [Record No. 70] First, he claims that the traffic stop occurring on June 23,

- 1 -

2018, was an unconstitutional pretextual stop and that the government failed to meet its burden to establish that it and the resulting seizure of evidence were lawful. [Record No. 70, p. 5] Second, he asserts that the magistrate judge erroneously concluded that Detective Clements' comments to him were not questioning or the functional equivalent of questioning for purposes of *Miranda*. [Record No. 70, p. 8] After considering the full record and the magistrate judge's Report and recommendation, the Court will deny Westbrook's motion to suppress.

## I.

This Court makes *de novo* determinations regarding those portions of the magistrate judge's recommendations to which objections are made. 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150 (1985). "When a magistrate's findings and recommendations rest upon the evaluation of the credibility of a witness, the district court is not required to rehear the testimony in order to conduct a *de novo* determination of the issues." *United States v. Woodruff*, 830 F. Supp. 2d 390, 396 (E.D. Tenn. 2011) (citing *United States v. Bermudez*, No. 99-6097, 2000 U.S. App. LEXIS 33159, at *8-9 (6th Cir. Dec. 11, 2000)). Further, "credibility determinations of the magistrate judge who personally listened to the testimony . . . should be accepted unless in its *de novo* review of the record the district court finds a reason to question the magistrate judge's assessment." *Woodruff*, 830 F. Supp. 2d at 396 (internal citations and quotations omitted).

## II.

The motion to suppress involves two encounters with law enforcement. The first (a traffic stop) occurred on June 23, 2018. The second involved the defendant's arrest and the related search of his vehicle outside of a local restaurant on August 31, 2018.

A.   The June 23, 2018 Encounter

On June 23, 2018, Officer Jacob Webster was patrolling the Elkhorn neighborhood of Lexington, Kentucky, an area known for drug activity, when he noticed a vehicle driving by a Waffle House restaurant located at 2340 Buena Vista Road. This observation occurred around 2:00 a.m. [Record No. 35-1, p. 5] The vehicle pulled into the restaurant's parking lot, and a female exited the vehicle and entered the premises. She remained there for a couple of minutes before quickly returning to the vehicle. [*Id*.] The vehicle then entered a Motel 6 parking lot, stayed for a brief period, and left the female at the motel. [*Id*. at 6.] Officer Webster followed the vehicle based on what he determined to be suspicious behavior. He then observed the driver fail to use a turn signal on two occasions. [*Id*.] Officer Webster stopped the vehicle following the second failure. [*Id*.]

Webster noticed that the defendant was the only occupant and smelled marijuana as he approached the vehicle. [*Id*.] He asked the defendant if he (Westbrook) knew why he had been pulled over. However, Westbrook stated that he did not know the reason. [Webster Body Cam at 0:00-2:30] The officer then explained that the defendant failed to use a turn signal on two occasions. [*Id*.] The defendant apologized but blamed a person with whom he was speaking over his phone as the cause for his distraction and the resulting traffic violations. [*Id*.] As backup arrived, Webster asked Westbrook to step out of the vehicle and advosed the defendant that he intended to search it. [Record No. 35-1, p. 6] Westbrook conceded that he also could smell marijuana, but denied smoking the substance. [*Id*.] During the resulting search, Officer Webster located methamphetamine, a loaded .45 caliber handgun, marijuana, digital scales, baggies, three cell phones, and an additional firearm magazine. [*Id*.] The officer also found $1,741.00 on Westbrook's person, and he placed him under arrest. [*Id*. at 7]

Westbrook was charged with multiple state felony offenses based on the June 23, 2018 encounter, but posted bond and was released from custody. He was later indicted by a grand jury and an arrest warrant was issued.

B.     **The August 30, 2018 Encounter**

On August 30, 2018, officers observed the defendant's vehicle parked at a restaurant in Lexington, Kentucky, and confirmed his license plate number. [Record No. 35-2, p. 6-7] Thereafter, they executed an arrest warrant, taking Westbrook into custody as he exited the restaurant. [*Id*. at 7] Officers searched the defendant following his arrest and recovered approximately seven grams of methamphetamine, marijuana, pills, and $1,170.00. [*Id*.] The officers planned to conduct a K-9 sniff of the vehicle, but inadvertently placed the narcotics found on Westbrook's person on top of the car, making the sniff impossible. [Record No. 46, pp. 56-57]

Officer Jeremiah Terry requested that Westbrook give consent for the search his vehicle and asked, "[i]s there anything in there that shouldn't be in there?" [*See* Record No. 46, pp. 62, 81.] Westbrook did not respond and instead asked to be taken to jail. [Davis Body Cam at 9:55-10:30] Detective Clements later spoke to the defendant, acknowledging that Westbrook had not provided consent to search his car. [Record No. 46, p. 62] Clements informed Westbrook that law enforcement would tow the vehicle and apply for a search warrant. [*Id*.] Westbrook responded by asking whether his wife could drive the car to his residence if he consented to the search. [Davis Body Cam at 15:30-16:30] Clements agreed that she could if nothing illegal was found inside the vehicle. [*Id*.]

Clements then asked if Westbrook had been read his *Miranda* rights. Westbrook replied in the negative, and Clements began to advise the defendant of those rights. [Record

No. 46, p. 59] However, Westbrook interrupted, stating that he knew his rights. [*Id.*] Clements nevertheless finished reading Westbrook's rights under *Miranda*. He then told Westbrook (again) that he was going to have the defendant's car towed and apply for a search of the vehicle. [Davis Body Cam at 17:55-18:55] Further, Clements again told Westbrook that his wife could drive the vehicle to the defendant's residence if nothing illegal was found during the search. [*Id.*] Westbrook requested to talk to his wife and asked Clements questions regarding the legality of fireworks in his car. [*Id.* at 22:15-24:00] The defendant then advised Clements that his wife had money and a firearm inside the vehicle. [*Id.*] His wife, however, gave a conflicting statement, indicating to officers that her firearm was at her residence. [Coleman Body Cam at 9:25-9:30]

Officers subsequently searched his vehicle, finding a loaded handgun and $11,200.00. [Record No. 35, p. 2] Westbrook was taken to the Lexington Police Department where he was again advised of his rights under *Miranda*. The defendant subsequently provided officers with information based on his knowledge of narcotics trafficking and firearms. [*Id.*]

## II.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend. IV. Westbrook contends that both the June 23, 2018 traffic stop and the August 31, 2018 search incident to arrest violated his Fourth Amendment rights. Additionally, he asserts that his Fifth Amendment rights were violated when he was interrogated before being read his *Miranda* rights.

### A. The June 23, 2018 Traffic Stop

A traffic stop constitutes a seizure of the driver and all of passengers under the Fourth Amendment. *Brendlin v. California*, 551 U.S. 249, 259-69 (2007). An officer may stop a

vehicle if there is probable cause to believe that a traffic violation has occurred. *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). And if a traffic stop is supported by probable cause, the officer's subjective intent is irrelevant. *Whren v. United States*, 517 U.S. 806, 813 (1996). "Police officers [may] stop vehicles for any infraction, no matter how slight, even if the officer's real purpose was a hope that narcotics or other contraband would be found as a result of the stop." *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995). And if an event occurs during the traffic stop that creates a reasonable suspicion of criminal activity, an officer may extend the stop. *Blair,* 524 F.3d at 752.

Westbrook argues that the officer's subjective intent is relevant in determining if there was an actual reason, beyond pretext, for the stop. He contends that Webster's testimony is the only evidence that he committed a traffic violation, so it is necessary to examine the officer's subjective intent in determining whether a violation occurred. The defendant argues that credibility is in issue because Webster decided to stop him before he committed a traffic violation. [Record No. 70, pp. 3-4]

As Magistrate Judge Stinnett correctly noted "an officer's subjective intent . . . can be 'relevant in assessing the credibility of the officer on the matter of whether an actual traffic violation was truly observed, or if there was no genuine traffic violation, and the stop was a pretext.'" [Record No. 66, p. 6 (citing *United States v. One Million, Thirty-Two Thousand, Nine Hundred Eighty Dollars in U.S. Currency*, 855 F. Supp. 2d 678, 692 (N.D. Ohio Mar. 2, 2012).] However, Webster's case report, testimony at the hearing, and bodycam footage support the conclusion that the defendant committed two traffic violations (i.e., failing to use a turn signal). First, Webster's case report states that he observed Westbrook fail to use his turn signal while traveling inbound on Winchester Road. And second, he observed Westbrook

fail to use a turn signal when changing lanes again on New Circle Road near Eastland. [Record No. 35-1, p. 6] Webster testified during the evidentiary hearing that he observed Westbrook proceed down Elkhorn and turn right onto Winchester Road but fail to use a turn signal. [Record No. 46, p. 9] And he further testified that he observed Westbrook fail to use a turn signal when he switched lanes on New Circle Road near a Marathon gas station. [*Id.*] Officer Webster also advised Westbrook when he stopped him that Westbrook did not use signal when turning off Elkhorn and again when changing lanes. [Webster Bodycam at 1:00-1:11] Westbrook also told the person with whom he was speaking on the phone (likely his wife) that he had forgotten to use a signal because they were arguing. [*Id*. at 2:20-2:30.]

This Court agrees with Magistrate Judge Stinnett that Webster "provided a credible and consistent narrative detailing how he had probable cause to initiate the traffic stop." His subjective intent is irrelevant because there is no question regarding Webster's credibility. Accordingly, the stop was permissible and did not violate the Fourth Amendment.

### B. The August 31, 2018 Encounter

Westbrook asserts that law enforcement officers violated his Fourth Amendment rights by searching his vehicle and that they violated his Fifth Amendment rights by questioning him before advising him of his *Miranda* rights.

#### 1. Questions from Law Enforcement

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The right against self-incrimination applies when a suspect is subject to custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). The parties agree that the defendant was in custody on August 31, 2018. Interrogation includes either "express questioning or its functional equivalent." *Rhode Island*

*v. Innis*, 446 U.S. 291, 300-01 (1980). It includes words or actions by law enforcement officers "that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id*. at 301. Further, asking questions prior to *Miranda* warnings can lead to the suppression of post-*Miranda* statements if the "earlier and later statements are realistically seen as parts of a single, unwarned sequence of questioning." *United States v. Pacheco-Lopez*, 531 F.3d 420, 427 (6th Cir. 2008).

In this case, officer Terry asked the defendant if "there anything that shouldn't be in there." The United States conceded that this question was interrogation. However, the defendant did not provide an incriminating response and he said nothing illegal was in his car. Additionally, the United States noted that it does not seek to introduce evidence of this exchange during trial.

Clements later talked to the defendant. Westbrook confirmed that he had not provided consent to search the vehicle. Clements explained that officers planned to tow the vehicle and apply for a search warrant. Westbrook then asked whether his wife could take his car home if he consented to the search and what would happen if the officers found fireworks in his car. The magistrate judge concluded that the statements by Clements were not interrogation. [Record No. 47, p. 8]

Clements then read Westbrook his *Miranda* rights and the parties again discussed the towing process. Westbrook inquired whether his wife could drive the vehicle to their residence if he provided consent to search. While asking questions of Clements, Westbrook stated that a firearm was present in the vehicle. Magistrate Judge Stinnett concluded that the defendant made this incriminating statement after he had been read his *Miranda* rights. The magistrate judge also concluded that this was a voluntary and spontaneous statement made during a

conversation that Westbrook initiated. [Record No. 47, p. 9] In response to Westbrook's statement, Clements asked the location of the gun.

The conversation between Clements and the defendant does not rise to the level of interrogation. Clements' statements to Westbrook are not the types of comments that an officer should know are "reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301. Instead, Clements merely confirmed that Westbrook had not provided consent to search the vehicle and explained the towing process before providing him with *Miranda* warnings. Westbrook then peppered the officer with questions and asked to speak to his wife. *See United States v. Howard*, 532 F.3d 755 (8th Cir. 2008) (no interrogation where the officer's remark was in response to the defendant's questions about the investigation). The magistrate judge's finding that Clements' conversation with the defendant was not interrogation is not erroneous.

But even if Clements' statements rose to the level of interrogation, the factors outlined in *Missouri v. Siebert* support the conclusion that the mid-stream *Miranda* warnings were effective. These factors are:

> (1) the completeness and detail involved in the first round of questioning; (2) the overlapping content of the statements made before and after the warning; (3) the timing and setting of the interrogation; (4) the continuity of police personnel during the interrogations; and (5) the degree to which the interrogator's questions treated the second round as continuous with the first. The results of the effectiveness inquiry inform the subsequent analysis: If yes [to the question of effective warning], a court can take up the standard issue of voluntary waiver and voluntary statement; if no, the subsequent statement is inadmissible for want of adequate *Miranda* warnings, because the earlier and later statements are realistically seen as parts of a single, unwarned sequence of questioning.

*United States v. Pacheco-Lopez*, 531 F.3d 420, 427 (6th Cir. 2008) (referencing *Missouri v. Seibert*, 542 U.S. 600, 615 (2004) (internal citations and quotations omitted); *see also United*

*States v. Ray*, 803 F.3d 244, 272 (6th Cir. 2015) (explicitly adopting the *Siebert* plurality's factor test).

The balance of these factors weigh in favor of finding that the *Miranda* warnings given to Westbrook were effective and that the pre-*Miranda* conversation and post-*Miranda* were separate and distinct. First, the completeness and detail involved in the first round of questioning was minimal. Officer Terry merely asked if there was anything in the vehicle to be concerned about and Clements confirmed what Terry had told Westbrook and explained the towing process before giving *Miranda* warnings. *See Woodruff*, 830 F. Supp. at 404 (finding that the statements after being given *Miranda* warnings were admissible because the first interrogation included only one question, the first interrogation was not detailed, and the contents of the statements only overlapped a little bit). Additionally, the statements made before Westbrook was read his *Miranda* warnings were not incriminating and were different from the statements made after the warnings. *See United States v. Conway*, No. 17-43, 2018 U.S. Dist. LEXIS 119929, *47 (E.D. Ky. 2018) (finding that second and fifth factors weighed against finding continuity because prior to the *Miranda* warnings the defendant was largely unresponsive and his statements were not inculpatory, it was not until after he received his *Miranda* warnings did he make an incriminating statement), adopted by *United States v. Conway*, 2018 U.S. Dist. LEXIS 118931 (E.D. Ky., July 17, 2018). While the conversations occurred close in time and there was continuity of police personnel, the other factors weigh in favor of finding that the mid-stream *Miranda* warnings were effective.

Because the *Siebert* factors weigh in favor of finding that the *Miranda* warnings were effective, the Court turns to whether the waiver of Westbrook's rights was voluntary. A waiver is voluntary if it is "the product of a free and deliberate choice rather than intimidation,

- 10 -

coercion, or deception" and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). A defendant can impliedly waive his right to remain silent by subsequently responding to questions posed by law enforcement. *United States v. Adams*, 583 F.3d 457, 467-68 (6th Cir. 2009). Here, the defendant explicitly stated that he knew his rights, peppered the officer with questions, and asked to speak to his wife. After conversing with Detective Clements and after receiving *Miranda* warnings, Westbrook stated that there was a firearm in the vehicle. Accordingly, the waiver of his rights was voluntary and his statement is admissible.

### 2. The Vehicle Search

When law enforcement officers have probable cause to believe that an automobile contains the fruits, instrumentalities, or evidence of a crime, the automobile exception provides that they may search the vehicle without a warrant. *See Collins v. Virginia*, 138 S. Ct. 1663, 1669-70 (2018); *Carroll v. United States*, 267 U.S. 132 (1925); *California v. Carney*, 471 U.S. 386, 390-94 (1985). "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion. . . . Probable cause exists where there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994) (internal citations and quotations omitted).

In *United States v. Johnson*, the Sixth Circuit held that there was probable cause to search the defendant's vehicle because he voluntarily informed an officer that he was a convicted felon and in possession of a firearm. 707 F.3d 655, 658 (6th Cir. 2013). The court explained that "admissions of a crime, like admissions against proprietary interests, carry their

own indicia of credibility – sufficient at least to support a finding of a probable cause to search." *Id*. (quoting *United States v. Burton*, 334 F.3d 514, 519 (6th Cir. 2003)).

Similar to *Johnson*, the defendant admitted that there was a firearm in his vehicle and officers knew that Westbrook was a convicted felon. While the defendant tried claim that his wife owned the weapon, she contended that she had left her gun at home. [Coleman Body Cam at 9:20-9:30] As a result of Westbrook's statement that a firearm was located in his vehicle and by virtue of his status as a convicted felon, officers had probable cause to search the vehicle. Accordingly, this search was not in violation of the Fourth Amendment.

### III.

Based on the foregoing reasons and analysis, it is hereby

**ORDERED** as follows:

1. The report and recommendation of United States Magistrate Judge Stinnett [Record No. 66] is **ADOPTED** in full and **INCORPORATED** here by reference.

2. Defendant Westbrook's motion to suppress [Record No. 65] is **DENIED**.

3. Defendant Westbrook's objections to the report and recommendation [Record No. 70] are **OVERRULED**.

Dated: July 22, 2019.

Signed By:
*Danny C. Reeves*
United States District Judge