UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 19-050-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| LAWRENCE WESTBROOK, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

Defendant Lawrence Westbrook has filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  [Record No. 195]  The motion will be denied for the reasons that follow.

**I.**

In June 2018, Westbrook was pulled over while operating a vehicle.  Officers conducted a search of the vehicle after smelling the odor of marijuana coming from the vehicle.  They found a bag on the floorboard containing the following:  over 158 grams of methamphetamine and 45 grams of marijuana, digital scales and baggies, and a loaded pistol with an extra loaded magazine and more ammunition.  [Record No. 155 at ¶ 10 (Presentence Investigation Report).]  Officers also found two cell phones in the vehicle and later located $1,741 in U.S. currency on Westbrook's person.  *Id.* at ¶ 10–11.  He was arrested but released on a cash bond.  *Id.*

About two months later, Westbrook was arrested on a warrant, and a search of his person revealed approximately 7.3 grams of methamphetamine, 3.3 grams of marijuana, two Xanax pills, two cell phones, and $1,170.  [Record No. 155 at ¶ 12]  His vehicle contained

- 1 -

$11,200 and a stolen, loaded pistol. *Id.* Meanwhile, a Fayette County grand jury indicted Westbrook for murder of a female with the crime allegedly occurring in 2017. *Id.* at ¶ 74.

After tracing the firearm uncovered during Westbrook's first arrest, a special agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives determined that co-Defendant Ronald Harrison purchased the firearm. [Record No. 155 at ¶ 13] Harrison subsequently disclosed to law enforcement that he had purchased several firearms with cash from Westbrook and then transferred them to Westbrook. *Id.* at ¶¶ 14, 16–17. Harrison admitted to purchasing at least three other firearms and trading them with Westbrook for heroin and cocaine. *Id.* at ¶¶ 18–21. A search of Westbrook's cell phone uncovered photos of firearms, some with Westbrook in the photos and some without. *Id.* at ¶ 26. His phone also contained a video depicting 26 firearms and several large capacity magazines spread out on a bed. *Id.*

In March 2019, a federal grand jury returned an indictment charging Westbrook with two counts of aiding and abetting the making of a false statement in the acquisition of a firearm, two counts of possessing with the intent to distribute methamphetamine, two counts of possessing a firearm in furtherance of a drug trafficking crime, and two counts of possessing a firearm by a convicted felon. [Record No. 1] Later in June 2019, a federal grand jury returned a superseding indictment, adding two additional counts alleging violations of 18 U.S.C. § 922(g)(1). [Record No. 48]

Ultimately, Westbrook pled guilty to possessing a firearm by a felon (Count 2s) in violation of 18 U.S.C. § 922(g)(1); possessing with intent to distribute fifty grams or more of methamphetamine (Count 6s) in violation of 21 U.S.C. § 841(a)(1); two counts of possessing a firearm in furtherance of a drug trafficking crime (Counts 7s and 10s) in violation of 18 U.S.C. § 924(c)(1)(A); and possessing with intent to distribute methamphetamine (Count 9s)

in violation of 21 U.S.C. § 841(a)(1). [Record No. 99] He was sentenced to 300-months imprisonment[1] to be followed by five years of supervised release. [Record No. 152] The United States Court of Appeals for the Sixth Circuit later affirmed Westbrook's conviction and sentence on appeal. [Record No. 177]

Westbrook made his first appearance in federal court in April 2019 pursuant to a writ of habeas corpus ad prosequendum. [Record Nos. 18 and 20] He was sentenced by the undersigned roughly eight months later. Consistent with his writ, Westbrook returned to state custody on the pending murder charge. [Record No. 197 at 3] In 2022, and while in state custody, he was charged with multiple counts of promoting contraband for which he pled guilty to a lesser charge, receiving a 30-day sentence. [Record No. 197-1]

On the murder charge, he pled guilty to an amended charge of complicity to manslaughter in the second degree. His six-year sentence was to be served consecutively to "any other previous felony sentence." [Record No. 197-2] Westbrook began his federal sentence on January 12, 2024, and his projected release date is in 2044. [*See* Record No. 197 at 3.]

**II.**

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). It, however, may reduce a defendant's sentence if it finds that "extraordinary and compelling reasons" warrant a reduction, the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and the 18 U.S.C. § 3553(a) factors, to the extent they apply, support a reduction. *United States v. Washington*,

---

[1] The sentence was imposed to run consecutively to any sentence imposed in Fayette Circuit case No. 18-CR-1347.

122 F.4th 264, 266 (6th Cir. 2024) (quoting *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (en banc) (quoting 18 U.S.C. § 3582(c)(1)(A))).

The Sentencing Commission amended § 1B1.13, effective November 1, 2023, and identified what may constitute "extraordinary and compelling reasons" for a sentence reduction. Specifically, the Court may consider: the defendant's "medical circumstances," and whether he is serving an "unusually long sentence" if he "has served at least ten years of the term of imprisonment" then changes to the law "(other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered . . . but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Washington*, 122 F.4th at 266–67 (citing U.S.S.G. Suppl. to App. C, amend. 814; U.S.S.G. § 1B1.13(b) (U.S. Sent'g Comm'n 2023)). That said, Section 1B1.13(b)(6) (*i.e.*, an unusually long sentence) is invalid because the Sentencing Commission exceeded its authority with that amendment. *United States v. Bricker, United States v. McHenry, and United States v. Orta*, 135 F.4th 427, 450 (6th Cir. 2025).

### III.

Westbrook contends that he was given an overly harsh sentence because of the six-level enhancement for possessing 25-to-99 firearms and a four-level enhancement for using a firearm in connection with a felony offense. [Record No. 195 at 4] He further asserts that his end-stage renal failure and other health conditions constitute extraordinary and compelling reasons for a sentence reduction.

Westbrook admits that he has "not been a model inmate" and that, due to his despair of losing his toes and facing a lengthy sentence, he has been sanctioned for possessing a "cell phone/hazardous tool." [Record No. 195 at 4] He further concedes to refusing "various

- 4 -

medications and treatments because he felt after the infection that caused the amputation that the BOP was not acting in his best interests and was not giving him the best medical care." *Id.*

The United States strongly opposes Westbrook's motion. [Record No. 197] It argues that his medical conditions were largely known by the Court at sentencing or otherwise fall short of extraordinary and compelling reasons. *Id.* at 6. And it further contends that all of Westbrook's medical conditions are being adequately managed by the BOP and that he has not consistently been compliant with recommended medical treatment. *Id.* at 7. Finally, the government confirms that Westbrook is undergoing dialysis treatment for renal failure. *Id.* at 8.

Concerning Westbrook's claim that his medical conditions place him at risk for complications with COVID-19 infections, the government identifies his failure to identify "any examples that he is at imminent risk" of contracting the virus. [Record No. 197 at 8] In any event, however, it argues that he has not shown that his ability to provide self-care in the correctional setting is diminished in any capacity. *Id.* (citing U.S.S.G. § 1B1.13(b)(1)(B)). Finally, it asserts that Westbrook's dissatisfaction with his sentence does not amount to an extraordinary or compelling reason for a sentence reduction. *Id.* at 9.

As the government argues, at the time of the sentencing hearing, the undersigned was aware of Westbrook's Ehlers-Danlos Syndrome, type-2 diabetes, kidney failure, and partial toe and bone removal from his foot. [Record No. 155 at ¶ 86] That information, along with Westbrook's mobility issues, were thoroughly and carefully considered by the Court when fashioning an appropriate sentence. [Record No. 166 at 100–01]

Regarding health condition developments since sentencing, Westbrook fails to identify any that amounts to extraordinary or compelling reasons for a sentence reduction. [*See* Record

No. 203 at 4–7.] Nor does he demonstrate that the BOP is failing to adequately manage his conditions, particularly when considering his repeated noncompliance with medical advice. So too for any claim that his conditions substantially diminish his ability to provide self-care in a correctional environment. [*See* Record No. 203 at 7–8.] To be sure, even classifying Westbrook's renal failure as a terminal illness under § 1B1.13(b)(1)(A) and taking his circumstances together under § 1B1.13(b)(5) still would not save him because the 3553(a) factors *do not* support a sentence reduction as discussed below.

And although Westbrook may believe that his sentence is "overly harsh," "'there is nothing "extraordinary" about leaving untouched the exact penalties that Congress prescribed' for the violation of a statute." *Washington*, 122 F.4th at 267 (quoting *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021)). And a criminal defendant "'serving the duration of a lawfully imposed sentence'" is routine, "'not compelling.'" *Id.* (quoting *McCall*, 56 F.4th at 1056). To the extent that Westbrook attempts to argue that § 1B1.13(b)(6)'s unusually long sentence provision applies, that provision is invalid. *Bricker*, 135 F.4th at 450.

Likewise, applying the relevant 3553(a) factors does not support a sentence reduction. Westbrook argues that he is no longer a threat to society because of his medical conditions and confinement to a wheelchair. [Record No. 195 at 4] And if granted a reduction, "he intends to act more maturely and responsibly as an inmate," which would result in him posing no threat to society. *Id.*

Conversely (and correctly), the government insists that applying the relevant 3553(a) factors caution against granting the defendant's requested relief. [Record No. 197 at 9] It makes the following arguments with regard to those factors: (1) the offenses of conviction were serious because they involved armed drug-trafficking on two occasions and used a straw

purchaser to obtain firearms; (2) since the age of eighteen, Westbrook has engaged in violent and alarming criminal conduct; (3) an early release would undermine the need to promote respect for the law and to provide adequate deterrence as demonstrated by the defendant's history of rapidly acquiring new criminal charges; and (4) Westbrook presents a high risk of recidivism due to his lack of rehabilitation and minimal percentage of his federal sentence that he has served. *Id.* at 9–12.

The undersigned agrees wholeheartedly with the government's application of the 3553(a) factors as they apply to Westbrook. He has an extensive and *violent* criminal history. His present offenses were serious and involved an exorbitant number of illegally acquired firearms. Before those offenses, he had multiple firearm charges, was involved in shooting two victims on two separate occasions, and he has continued to be sanctioned while incarcerated for failing to follow rules. [Record No. 155 at ¶¶ 67, 74] Westbrook's confinement to a wheelchair and medical issues have not impeded his wrongful conduct during imprisonment and there is no reason to believe his impediments would deter similar conduct if he were to be release early. [Record No. 197-1 at 1–5] His continued incarceration is necessary to protect the public from crimes he may commit if released.

In short, Westbrook's sentence remains *minimally* sufficient to satisfy the purposes of 18 U.S.C. § 3553(a).

**IV.**

Having carefully considered the matter, it is hereby

**ORDERED** that Defendant Westbrook's motion [Record No. 195] is **DENIED**.

Dated: March 17, 2026.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky